Argued at Pendleton May 7; reversed July 10; rehearing denied September 11, 1934

## MASON *v.* MASON ET AL.
### (34 P. (2d) 328)

*Charles Z. Randall,* of Pendleton (J. O. Turner, of Heppner, and Fee & Randall, of Pendleton, on the brief), for appellant.

*John F. Kilkenny,* of Pendleton (Raley, Raley & Warner and Alfred F. Cunha, all of Pendleton, on the brief), for respondents.

RAND, C. J.  On May 14, 1919, Mary Mason, one of the defendants herein, obtained in the circuit court for Morrow county a decree of divorce from F. E. Mason, the plaintiff herein, and was awarded the custody of two minor children. While that suit was still pending in that court, the parties entered into a contract settling their property rights between them. It was agreed that he should convey to her certain of his real property and that she should relinquish to him all her right, title and interest in the remainder; that he should pay all the costs and attorney's fees incurred in the suit; that he should pay her $300 in cash as alimony and also should pay to her $40 per month for the support and education of said children. After entering into said contract, plaintiff made no further appearance in the suit and a decree was entered which divided the property between them as had been agreed upon and awarded the custody of the children to her, and otherwise conformed to the contract except it provided that plaintiff should

pay to her "as alimony and for the support of said children and herself the sum of $300 in cash and $40 per month beginning with the month of May, 1919". Of this change by the decree in the terms of the contract, if it amounted to a change, plaintiff had no notice or knowledge and never consented thereto. After the entry of the decree, both parties fully complied therewith until May, 1926, when she abandoned the custody of the children and refused any longer to support or maintain them and thereupon plaintiff took said children into his own custody and ceased paying any sums of money to her and maintained and educated said children until one of them had died and the other, in 1931, had become of age, and while so doing expended more than $40 per month in their education and support.

In April, 1932, although some 13 years had elapsed after the entry of the divorce decree and the same had never been docketed in the judgment lien docket of the county nor become a lien against plaintiff's real property and, although one of said children was then dead and the other had become of age, the clerk of the court, at the instigation of Mary Mason and without notice to plaintiff or application having been made to or action taken by the court, docketed said decree in the judgment lien docket of Morrow county as a lien against plaintiff's real property in the sum of $2,680, which amounted to $40 per month from May, 1926, when she abandoned the children, to April, 1932, when said docketing was done, and issued a writ of execution thereon and placed the same in the hands of her co-defendant as sheriff of the county for service.

Whereupon plaintiff brought this suit to enjoin the enforcement of the writ, setting up the foregoing facts in his complaint as a defense against the validity of the writ and also by way of an estoppel. A demurrer to

the complaint was sustained, the suit was dismissed, and plaintiff has appealed.

Plaintiff assigns the ruling of the court in sustaining the demurrer to the complaint as error upon the following grounds: 1. That by force of section 1-203, Oregon Code 1930, the divorce decree had become dormant and plaintiff's obligations thereunder terminated at the expiration of 10 years from the date of its rendition; 2. That there was no authority in law for the clerk to docket the decree nor to issue an execution thereon and, therefore, that the writ is void; and 3. That the plaintiff in the writ is estopped, by her own misconduct in refusing to exercise custody over the children and to support and maintain them, to assert any claim or demand against the plaintiff for any payment whatever during the time she was herself in default and while plaintiff was supporting the children.

■ Section 1-203 provides: "An action upon a judgment or decree of any court of the United States, or of any state or territory within the United States", shall only be commenced within 10 years. This section was held to have no application to a domestic judgment or decree in *Murch v. Moore,* 2 Or. 189, and *Strong v. Barnhart,* 5 Or. 496. Plaintiff contends that the ruling in those cases ought not be adhered to now for the reason that it is contrary to the great weight of authority in other states where the same or a similar statute obtains. He cites numerous cases to support his contention and particularly the case of *Citizen's National Bank v. Lucas,* 26 Wash. 417 (67 P. 252, 56 L. R. A. 812, 90 Am. St. Rep. 748), where, after reviewing many decisions, Mr. Justice Dunbar held that a statute of the state of Washington identical to our own was applicable to domestic judgments. Our statute was enacted on October 11, 1862. See Section

5, Title II, General Laws of Oregon, compiled and annotated by M. P. Deady. On the same day sections 271-292 of the same compilation were likewise enacted. Under these latter sections, a judgment could be continued in force indefinitely merely by the issuance of writs of execution and, if a period of five years had elapsed without an execution having been issued on said judgment, an execution could be thereafter issued on application made to the court in the manner provided by said section 292. These provisions which refer to domestic judgments and decrees only and have no application to the judgments of a sister state clearly show that it was not the intention of the legislature to make section 5, Title II, now section 1-203, Oregon Code 1930, applicable to a domestic judgment or decree.

Again in *Beekman v. Hamlin,* which was before this court upon three different appeals and is reported in 19 Or. 383 (24 P. 195, 10 L. R. A. 454, 20 Am. St. Rep. 827); 20 Or. 352 (25 P. 672); and 23 Or. 313 (31 P. 707), and which was a proceeding on motion for leave to issue execution on a dormant judgment, the judgment in that case had been rendered some 27 years before the filing of the motion and there had been no partial satisfaction of the judgment and no execution had been issued thereon, and, in effect, it was held that the lapse of time, upon a proper showing being made, was not a bar to the revival of the judgment and the issuance of an execution thereon. Point 2 of the syllabus upon the third appeal (23 Or. 313) reads as follows:

"On a motion for leave to issue execution on a dormant judgment under Hill's Code, § 295, the presumption of payment arising from the lapse of 20 years, may be rebutted by any evidence of the situation of the parties, or other circumstances tending to satisfy the jury that the debt is still due; and the evidence of

the plaintiff, if uncontradicted and entitled to full credit, is sufficient to establish that fact.''

From each of the three decisions in *Beekman v. Hamlin,* supra, it seems clear that the court was of the opinion that section 1-203 had no application to a domestic judgment or decree. See also *Bowman v. Holman,* 53 Or. 456 (99 P. 424), and *Alexander v. Munroe,* 54 Or. 500, 513 (103 P. 514, 135 Am. St. Rep. 840). We, therefore, adhere to the ruling in *Murch v. Moore* and *Strong v. Barnhart,* supra.

■ We think, however, that plaintiff's second and third contentions must each be sustained. Section 2-1601 makes it the duty of the clerk immediately after the entry of judgment in any action to docket the same in the judgment docket and makes the judgment, when so docketed, a lien upon the real property of the defendant in that county, or which he may afterward acquire therein during the time an execution may issue thereon. That section is made applicable to decrees by section 6-210. In order, therefore, for a judgment or decree which does not affirmatively provide that it shall be a lien upon real property to become a lien thereon, it is necessary that the judgment or decree be first docketed in the judgment lien docket of the county wherein the decree was rendered. The decree in the instant case did not affirmatively provide that it should be a lien upon any property and it was not docketed until April, 1932, some 13 years after its rendition. Therefore, if it became a lien at all upon plaintiff's real property, it was because of the docketing of the decree in April, 1932.

In June, 1919, when this divorce decree was entered, section 514, Or. L., which was then in force read thus:

''At any time after a decree is given, the court or judge thereof, upon the motion of either party, shall

have power to set aside, alter, or modify so much of the decree as may provide for the appointment of trustees for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party to the suit.''

■ Under the statute as it then stood, it was within the power of the court in which a decree of divorce had been granted, at any time after the same was given, to set aside, alter or modify so much of the decree as provided for the care and custody of the minor children or the nurture and education thereof, or the maintenance of either party to the suit; where the power was not reserved in the decree itself, it nevertheless existed as an element thereof by virtue of the statute: *Henderson v. Henderson,* 37 Or. 141 (60 P. 597, 48 L. R. A. 766, 82 Am. St. Rep. 741). And this power was not limited to future installments but existed and could be exercised upon a proper showing as to installments which had already accrued: *Henderson v Henderson,* supra; *Brandt v. Brandt,* 40 Or. 477 (67 P. 508). Where the power to modify a decree in respect to said matters is reserved in the decree itself, or exists by force of a statute, such decree in respect to those matters is not final nor are the matters thereby determined res adjudicata. See cases last cited. In *Mansfield v. Hill,* 56 Or. 400 (107 P. 471, 108 P. 1007), the court said:

"The provision of the divorce decree for future monthly payments by defendant until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien upon his property.''

Again, the court said:

"* * * if the amount were a definite sum named in the decree, it would constitute a lien from the time it is docketed, under the terms of section 205, B. & C.

Comp., which provides that, from the date of docketing a judgment as in this chapter provided, such judgment shall be a lien upon all the real property of the defendant within the county, etc.''

See also *Corder v. Speake,* 37 Or. 105 (51 P. 647); *Brandt v. Brandt,* supra; and *Forbes v. Jennings,* 124 Or. 497 (264 P. 856), where these questions are discussed.

██ Under the authorities cited, the divorce decree, providing for future monthly payments and not for a definite sum named in the decree, was so indefinite as to duration and amount that no lien could attach by virtue of the decree and there was no provision under the statute by which it could be docketed so as to create a lien against plaintiff's real property. The decree was merely a personal decree and one which could not be enforced by execution but which could only be enforced by attachment of the plaintiff's person in a contempt proceeding. In 1921, the legislature amended section 514, Or. L., by merely adding thereto the following words:

''provided, however, that such decree shall be a final judgment as to any installment or payments of money provided for therein which have accrued up to the time either party shall move the court to set aside, alter or modify the same; and provided further, that the court shall not have the power to set aside, alter or modify such decree or any portion thereof which may provide for the payments of money, either for the nurture or education of minor children or the maintenance of either party to the suit, which have accrued prior to the filing of such motion.''

As so amended, it is now section 6-915, Oregon Code 1930. It will be seen from a careful reading of the amended statute, that a divorce decree providing for monthly payments becomes a final judgment as to any

installments or payments of money provided for therein which have accrued up to the time either party shall move the court to set aside, alter or modify the same, and, when such motion is made, it takes away from the court the power to set aside, alter or modify such decree or any portion thereof which provides for the payment of money either for the nurture or education of minor children or the maintenance of either party to the suit which have accrued prior to the filing of such motion. The effect of this amendment was considered in *Forbes v. Jennings,* supra, but we do not deem this amendment applicable in the instant case for the reason that neither party, so far as the record shows, has ever moved the court to set aside, alter or modify the decree and no action has ever been taken by either party to obtain any relief by reason of the amendment. So far as this case is concerned, the rights of the parties are no different from what they would have been had the amendment never been made. Under this view of the case, no part of the decree requiring the payment of money by the plaintiff herein to the defendant has ever become a final decree, nor a lien against plaintiff's property. If, pursuant to the provisions of the amended statute, the defendant had applied to the court for a modification of the decree, a different question might then have been presented. What the effect of such application would have been, is a matter with which we are not now concerned and upon which we pass no opinion. Instead of making such application to the court, where the rights of the parties could have been heard and determined, she applied to the clerk, who had no independent knowledge of his own and no way of ascertaining what payments, if any, had been made to her by this plaintiff, and no power to act in the premises.

■ While it is true as plaintiff contends that, under section 2-1601, it is the duty of the clerk immediately after entry of judgment in any action to docket the same in the judgment docket and said docketing is purely a ministerial act, yet, as we have seen, the divorce decree was not a final judgment and could not become a final judgment, so as to entitle it to be docketed, in the absence of some proceedings taken before the court pursuant to said section 6-915. From this it follows that the docketing of this decree as a lien against plaintiff's real property was void and, under the facts alleged in the complaint, the clerk was likewise without authority to issue any execution thereon. Nor do we think that the defendant, after having obtained the custody of the children under and by virtue of the decree and later, for no reason whatever so far as the record shows, having abandoned the children and refused to care for and maintain them, is entitled to any relief under the decree during the time she was herself in default and plaintiff had been supporting the children.

It is alleged in the complaint that, because of defendant's actions in failing to perform the duties imposed upon her by the decree and her acquiescence in plaintiff's support of the children without making any monthly payments to her, amount to an estoppel. Whether that be true or not, it is not equitable that the plaintiff should now be required to pay to defendant the same or any moneys that he has already expended in the support of the children during the time that defendant was herself in default.

For these reasons, the decree of the lower court will be reversed and an injunction will issue as prayed for in the complaint.

BEAN, CAMPBELL and BAILEY, JJ., concur.