Argued and submitted November 3, 1981, modified February 10, 1982

In the Matter of the Marriage of
EAGEN,
*Respondent on Review,*
*and*
EAGEN,
*Petitioner on Review.*
(CA 18270,   SC 27951)
640 P2d 1019

Richard L. Lonergan, Portland, argued the cause for petitioner. With him on the petition were Andrew J. Gerlicher, Howard R. Lonergan and Clint A. Lonergan, Portland. On the brief was Andrew J. Gerlicher, Portland.

Ronald E. Hergert, Oregon City, argued the cause for respondent. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, P.C., Oregon City.

TANZER, J.

Peterson, J., filed a dissenting opinion.

## TANZER, J.

This is an appeal from an order allowing credit for unpaid accrued child support. The marriage of the parties was dissolved in 1973. Custody of their 11-year-old child was awarded to the mother and the father was ordered to pay $150 per month child support until "further order of this court or until said minor child attains age 21, dies or marries or becomes self-supporting or otherwise emancipated, whichever first occurs." Despite the decree, the child lived with the father continuously since the dissolution until she married in November, 1977, except for one month when she stayed with her mother. The father made no support payments.

In June, 1980, the father moved for an order giving him credit for all child support payments accrued since the decree because the child had lived with him and then married. For "equitable considerations," the trial court ordered the judgment for accrued child support payments satisfied as of the date of the dissolution forward, with the exception of $150 for the month during which the child lived with the mother. The Court of Appeals, in banc, affirmed, for equitable reasons, among others. The dissenting judges concluded that no credit was allowable regardless of equitable considerations.

This case is governed by ORS 107.135(2)[1] which provided:

> "The decree is a final judgment as to any instalment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion."

[1] The legislature has since dealt with this problem by amending ORS 107.135(2) by adding:

"However, the court may allow a credit against child support arrearages for periods of time, excluding reasonable visitation unless otherwise provided by order or decree, during which the obligated parent has physical custody of the child with the knowledge and consent of the custodial parent." Or Laws 1981, ch 855.

Before the enactment of the statute, this court had held that an order for periodic support payments was merely personal and was too indefinite to be enforceable by judgment lien. The court later acknowledged in *Forbes v. Jennings,* 124 Or 497, 264 P 856 (1928), that the purpose of the enactment of what is now numbered ORS 107.135(2) was to raise support orders to the dignity of judgments, enforceable as such. The general rule is that courts may deem a judgment satisfied only if paid according to its terms or in an alternative manner agreed to by the parties as satisfactory:

> "Except where a judgment by its own terms provides otherwise, a judgment for the payment of money can be satisfied only in money, unless the owner of the judgment chooses to accept property, securities, or some other thing of value * * *.
>
> "In order that the acceptance of something other than money may operate as a satisfaction, there must be a positive and express agreement to accept the substitute for direct payment of the judgment. * * *" (Footnotes omitted.) 49 CJS *Judgments* § 552, pp 1022-1023 (1947).

If this were a proceeding in which the mother was seeking an order of support, her tacit agreement to the father's actual support of the child would have been material as a defense. After judgment, however, any such defense is immaterial because all defenses merge into the judgment, *Security Inv. Co. v. Miller,* 189 Or 246, 251, 218 P2d 966 (1950); *see also* Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, 1973). Such pre-judgment conduct cannot be deemed an agreement to accept an alternative form of satisfaction of the subsequent judgment.

■ In *Poe v. Poe,* 246 Or 458, 425 P2d 767 (1967), this court rejected a motion to set aside an accrued judgment based upon a claim of estoppel. We held that the above statute barred the setting aside of a judgment:

> "This court has repeatedly held, since the finality of the installment judgment was added to the statute in 1921 (Oregon Laws 1921, ch 114, p 225), that the court is without power to modify or change support money payments once they have become a judgment. *Shelley v. Shelley,* 1955, 204 Or 436, 283 P2d 663, reviewed the previous cases and confirmed that the statute does not permit the court to alter the prior installment judgment." 246 Or at 459-460.

Although *Poe* involved estoppel, it is consistent with the broader proposition that judgments cannot be set aside for equitable reasons, except for fraud or duress or some equally egregious reason.[2] We are aware that some courts have set aside support judgments for equitable reasons, contrary to the general rule and to our holding in *Poe, see* Annot., *Child Support — Right to Credit,* 47 ALR3d 1031 (1973), but those holdings do violence to principles protecting the integrity of judgments and have ramifications far beyond the law of domestic relations.

There is language in *Briggs v. Briggs,* 178 Or 193, 165 P2d 772, 166 ALR 666 (1946), suggesting a general rule to the contrary. The language used and authorities cited in *Briggs* are not conclusive as to what rule was actually adopted as a rationale for the decision. The holding was consistent with our holding today: payments made directly to the children were not credited against accrued unpaid alimony and support. The order allowing certain credits, to which the dissent refers, was not in issue because it was consented to by the plaintiff, as the court expressly noted. 178 Or at 203.[3]

■ The remedy afforded to the noncustodial father in *Ellis v. Ellis,* 292 Or 502, 640 P2d 1024 (1982), is not available to the father in this case. There we held that an order declaring the noncustodial parent's support obligation to have terminated when the child was emancipated merely clarified the application of the decree and did not modify it. In this case, by operation of the decree, the father's obligation continued as long as the mother had legal custody of the minor child and that state continued to exist until the child's marriage. For us to hold otherwise would be, in effect, a retroactive modification of the custody and support provisions which is prohibited by ORS 107.135(2).

---

[2] *See, e.g., Slate Const. Co. v. Pac. Gen. Con., Inc.,* 226 Or 145, 359 P2d 530 (1961), and *O.-W. R. & N. Co. v. Reid,* 155 Or 602, 65 P2d 664 (1937).

[3] The dissent also cites *Chapman v. Chapman,* 177 Or 239, 161 P2d 917 (1945), which is not in point. There, this court reversed a circuit court modification of a custody award and, as we read the opinion, gave credit to the respondent for care provided during the pendency of the modified order, 177 Or at 244. If the court had intended a broader holding, it would surely have cited *Chapman* in the *Briggs* opinion only a few months later.

We share the concern of the Court of Appeals not to "countenance this mother's singularly unjust effort to undo the past and collect $10,500 which was decreed for child support and which the father has in fact paid," but we are obliged under the applicable Oregon statutes to hold that the father is not entitled to a satisfaction of judgment for the period from the date of the divorce to the marriage of the child. Because no such issues are presented to us, however, we express no opinion concerning the availability of other collateral remedial relief such as proceedings to enjoin enforcement of the judgment. *Mason v. Mason,* 148 Or 34, 34 P2d 328 (1934).[4]

Modified. The order directing satisfaction is modified to apply only to those payments accrued under the decree from November, 1977, forward. No costs to either party.

**PETERSON, J.,** dissenting.

Although ORS 107.135(2) prohibits a court from setting aside, altering or modifying a decree for installment payments of support provisions, I would hold, as did the Court of Appeals in this case, and as did this court in a previous decision, that "special considerations of an equitable nature may justify a court in crediting * * * payments [made directly to the children] * * * when that can be done without injustice to the * * * wife." *Briggs v. Briggs,* 178 Or 193, 204, 165 P2d 772 (1946).

The decree in this case provides that the father was to pay "* * * through the Clerk of the Circuit Court for Clackamas County, Oregon City, Oregon, the sum of $150 per month as and *for the support, care and maintenance of the minor child * * *.*" (Emphasis added.) The Court of Appeals found that "* * * the mother intentionally left her daughter with the father because the daughter might interfere with the traveling lifestyle mother chose to follow after the dissolution. Mother had, in fact, transferred the responsibility for the care and custody of the daughter to father. * * *" 52 Or App at 303. The Court of Appeals also

---

[4] Certain of the reasoning in *Mason* was disavowed in *Briggs,* 178 Or at 201, but the holding allowing a suit to enjoin enforcement of a judgment has not been overruled to date. *See also Parker v. Reid,* 127 Or 578, 581-582, 273 P 334 (1928).

found that "* * * the father has supported and maintained the child *himself,* a service performed for the mother which the evidence shows had a value of at least $150/month. Unless some statute prevents it, father is entitled to a partial credit of the judgment because, so far as equity is or ought to be concerned, *he has paid it."* (Emphasis in original.) 52 Or App at 302.

The majority hold that "* * * the father's obligation continued as long as the mother had legal custody of the minor child * * *." This conclusion is based upon the premise that allowing the father credit for the support actually provided "* * * would be, in effect, a retroactive modification of the custody and support provisions which is prohibited by ORS 107.135(2)." I disagree. I would hold that when a parent is given actual custody on a permanent basis, by the parent having legal custody, giving credit to the supporting parent is not an alteration, modification, or setting aside of a decree for the payment of money.

ORS 107.135(2) does not prohibit a payor from being *given credit* for monies paid pursuant to a decree. The Court of Appeals analysis on this point reflects fairness and equity; and its holding is squarely within the literal meaning of the statute. The Court of Appeals held:

"* * * Mother's argument is based upon an incorrect premise. Despite her insistence, this is *not* a proceeding to 'set aside, alter or modify' a support order as described in ORS 107.135(2). The father here does not deny that he has had the support obligation. He is not asking that it be set aside, or altered, or modified. He is asking for an order that he be allowed a credit for child support during the lengthy period of time the child was living with him—that is, a recognition that the obligation was paid. * * *" (Emphasis in original.) 52 Or App at 302.

Our precedents suggest this result. In *Briggs v. Briggs,* 178 Or 193, 165 P2d 772 (1946), a decree required the husband to pay child support to the wife. While the children were in college, the husband paid money for the childrens' education directly to the children. He claimed that he should be given credit for those amounts, against the amount due under the decree. We acknowledged the fact that the statute provides that each support installment of a decree becomes a final judgment until the filing of a

motion to modify the decree. We stated, "Once the total amount which the defendant was required to pay has been computed, it will be necessary to determine the credits which the court of equity should allow to [the father]." 178 Or at 202, 203. We then concluded:

> "The general rule is to the effect that, when a defendant husband is required by a divorce decree to pay to the plaintiff money for the support of the children and the unpaid and accrued installments become judgments in favor of the plaintiff, he cannot, as a matter of law, claim credit on account of payments voluntarily made directly to the children, though special considerations of an equitable nature may justify a court in crediting such payments on his indebtedness to the plaintiff when that can be done without injustice to the plaintiff wife. Circumstances might also arise which would render it inequitable for the court to lend its aid in compelling the defendant to pay the same amount to the plaintiff which he had already expended in support of the children. * * *" 178 Or at 204. (Citations omitted.)

We held that the father was entitled to credit on his child support obligation for money paid directly to the children during the time they were in college.[1]

The majority rely upon *Poe v. Poe*, 246 Or 458, 425 P2d 767 (1967). That case is not in point. In that case, the husband obtained a divorce from the wife, and the decree required him to pay $15 per month as child support for each of two children. In 1952, he quit paying the child support payments. The wife raised the children. In 1966, the wife filed a motion for a judgment for the unpaid support payments. The husband then filed a motion to set aside the judgment, claiming that he quit making the payments at the wife's request, and that she had made no effort, since 1952, to collect the support money, and that she now be estopped. Citing ORS 107.135(2), we affirmed the trial court, holding that that statute prohibited courts from modifying or changing support money payments once they have become a judgment. *Poe* is distinguishable. There,

---

[1] Concededly, the holding is not a strong one for the position I espouse because the wife was apparently "willing to credit the [husband] on account of payments to the [children] while in college." 178 Or at 203. The court concluded, however, that the husband should receive credit "[i]n view of the apparent consent of the plaintiff *and the equities of the situation.*" 178 Or at 207. (Emphasis added.)

the husband provided no support and did not have custody of the children and was, in effect, seeking a retroactive modification.

The majority "* * * express no opinion concerning the availability of other collateral remedial relief such as proceedings to enjoin enforcement of the judgment." In *Mason v. Mason,* 148 Or 34, 34 P2d 328 (1934), a decree provided that the mother would have custody of the children and receive monthly child support payments from the father. The mother subsequently abandoned the children, the husband took the children into his own custody and, as here, ceased paying any sums of money to the wife. Years later the wife sought to collect the accrued child support. The husband brought a separate suit to enjoin the enforcement of the writ of execution which had been issued incident to the attempt to collect on the decree. The trial court dismissed the husband's suit, and the husband appealed. On appeal, we reversed, saying:

> "It is alleged in the complaint that, because of defendant's actions in failing to perform the duties imposed upon her by the decree and her acquiescence in plaintiff's support of the children without making any monthly payments to her, amount to an estoppel. Whether that be true or not, it is not equitable that the plaintiff should now be required to pay to defendant the same or any moneys that he has already expended in the support of the children during the time that defendant was herself in default." 148 Or at 43.

*Compare: Chapman v. Chapman,* 177 Or 239, 244, 161 P2d 917 (1945). I would do directly what the majority ultimately may approve indirectly.

Finally, I would add that the decree entered by the trial court in this case, as stated above, requires the husband to pay the sum of $150 per month to the clerk of the court. The evidence shows that, shortly after the husband received custody of the minor child, he went to the county clerk's office and was advised by one of the deputies that he should write them a letter for the files and that he would no longer be "bothered" about the matter. The evidence shows that the husband discontinued the support payments with consent of the wife and the consent of the clerk.

The application of a rule of law to the limitless fact situations which come before courts occasionally results in decisions which are unfair and inequitable. This is such a case, doubly regrettable because the statute does not require it. In defense of the majority (who have neither requested a defense nor really need a defender), it is well to remember this statement of Lord Blackburn in *River Wear Commissioners v. Adamson,* 2 App Cas 742, 746 (House of Lords, 1877):

"But it is to be borne in mind that the office of the judges is not to legislate, but to declare the expressed intention of the Legislature, even if that intention appears to the court injudicious * * *."

Tongue, J., joins in this dissent.